## THE ECLIPSE BICYCLE COMPANY *v.* FARROW.

---

CONTRACTS; EQUITY; FRAUD; ACCOUNTING; CONSTRUCTIVE NO-
   TICE; ADEQUATE REMEDY AT LAW; MULTIFARIOUSNESS.

1. Where an inventor assigns his invention to a company in consideration of which the latter agrees to manufacture and sell his device with due diligence and by all proper and legitimate enterprise and to pay him royalties on those manufactured,

the company is not at liberty thereafter to discard the invention and substitute therefor the invention of another person, especially where it appears that the substituted device has been adopted simply as a pretext to evade liability under the contract with the first inventor.

2. Under such circumstances, the use by the company of the substituted device inures in equity to the benefit of the first named inventor who in an accounting with the company is entitled to royalties not only upon the devices manufactured under his contract but upon those of the substituted devices manufactured by the company.

3. In making such a contract the company is chargeable with notice of the existence of a prior patent for a similar invention, and can not escape liability in a suit for such an accounting by showing a purchase by it of such patent and by a claim that it dominates both the invention covered by its contract and the device afterwards substituted therefor.

4. A bill in equity for an accounting under such circumstances is maintainable, as the remedy at law while open to the complainant is inadequate.

5. A claim by the defendant that such a bill is multifarious in so far as to an accounting it seeks to add an attempt to have the substituted device adjudged to be a mechanical equivalent to that of the complainant, is untenable, where the bill does not seek an adjudication of the rival merits of the two inventions, but charges that in the hands of the company the second device was merely a substitute for that of the complainant and as such intended to defeat and evade his just claims.

No. 978. Submitted May 1, 1900. Decided June 5, 1900.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, in a suit for an accounting. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. D. S. Mackall* and *Mr. J. A. Maedel* for the appellant.

*Mr. Henry M. Earle* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

Under date of June 5, 1897, the appellant, the Eclipse Bicycle Company, a corporation organized under the laws of the State of New York, and located at Elmira in that

State, but having an office and doing business also in this District, entered into a contract in writing with the appellee, Willard M. Farrow, of this city, for the purchase from the latter of certain inventions made by him, consisting of "improvements in bicycles and like vehicles, pertaining to automatic mechanism for coasting and braking," for which the appellee had two several applications for patents then pending in the Patent Office, and for which, as stated in the contract, he intended to file additional applications.  By this contract the appellee sold and transferred to the appellant company all his right, title and interest in and to the inventions described and claimed in the applications referred to, and any letters patent that might be issued therefor, and in and to all future improvements thereon; and, in consideration of such sale and transfer, the appellant company agreed to pay to the appellee a certain royalty on each device to be made by it that should embody the invention referred to, to make due returns to him of all its sales at certain specified times, and to use due diligence in the manufacture and sale of such devices.   In the event of the failure of the company to comply with any of these agreements the title to the inventions and to the letters patent expected to be issued therefor was to revert to Farrow.   And it was further provided in the contract that, if for any reason Farrow should fail to procure the issue of letters patent for his invention, the company should be relieved from the payment of any royalty therefor from and after the date of the final adverse action of the Patent Office on the application or applications for patents for the said improvements.

There was a contemporaneous oral agreement, in pursuance of which Farrow assigned to the company all his right in the applications then pending in the Patent Office, revoked the authority of the attorney who was then prosecuting them, and appointed the attorney of the company as his attorney to prosecute such applications; and this assignment appears to have been filed in the Patent Office, and

to have given the company the exclusive control of the further prosecution of the proceedings in the office.

The company seems to have proceeded without delay to manufacture the appellee's device and to place it on the market; and it was advertised extensively under the designation of "the Farrow automatic brake and coaster." But on July 19, 1897, one Alexander P. Morrow, superintendent of the company at its home office in Elmira, claiming to have invented a different device to effect the same purpose as that for which the Farrow device was intended, filed an application in the Patent Office for letters patent therefor through the attorney of the company; and it would appear that the company almost immediately ceased to manufacture the Farrow device, substituted the Morrow device in place of it, and advertised it in substantially the same terms as it had previously advertised the Farrow device. Morrow assigned a one-half interest in his invention to Fulton, the president of the company. The company failed to make any payments or any returns to Farrow; and the appellee seems to have been unable even to procure any information as to the condition of things from the president or officers of the company.

One of Farrow's applications, after its patentability had been allowed, was placed in interference with the several applications of three other persons; but upon the declaration of interference and the filing of the preliminary statements, the attorney of the company did not deem it expedient to prosecute the claim of Farrow any further, and it was abandoned. Whether this course was taken with the consent of Farrow, is not quite apparent. At all events, it does not appear definitely that Farrow knew of this action of the attorney, or acquiesced in it. The other application of Farrow was not contested, and after some modification of the claims was allowed by the Patent Office, and authorized to go to an issue. But the company permitted the application to lapse by failure or refusal to pay

the fee required upon the issue of a patent; and consequently no patent was ever issued.

In the meantime, although at what precise time does not appear in the record, the company had in some way become the owner of a patent issued in the year 1889 to Stover and Hance; which, although not set up in the record as a defense, is now claimed in argument on behalf of the company to dominate both the device of Farrow and that of Morrow; and it is now claimed, only in the argument, however, that the company is operating, not under either the invention of Farrow or that of Morrow, but under the patent to Stover and Hance.

Upon the continued failure of the company to make any returns to him, or to give him any satisfaction on the subject, Farrow instituted the present proceeding in the Supreme Court of the District by filing a bill in equity for an account. The proceeding resulted in a decree in his favor, the court holding that he was entitled to royalty from the company for the devices manufactured by it under the Morrow patent, as well as for those professedly manufactured or intended to be manufactured under the contract between the company and Farrow; and a reference to the auditor was directed for the statement of such an account. From this decree the company has appealed.

The testimony in the case is remarkably indefinite in some of its features; but for this indefiniteness the appellee is scarcely responsible. He was compelled to summon the officers and agents of the company to prove portions of his case; and these were in the main hostile witnesses interested in the defeat of his claim. The testimony of one or two of these witnesses, notably the president of the company, who was the person who executed the contract with the appellee on behalf of the company, is characterized by conspicuous and studied forgetfulness of many things of interest to the appellee, and some of which certainly could have been recalled without great difficulty. But there is

sufficient in the record to justify the conclusion that the conduct of the company in its operations under the Morrow patent and the Morrow invention and in its purchase of the Stover and Hance patent, whatever it may suppose to have been its good faith in the matter, virtually operated as a fraud upon the rights of the appellee under the contract. The execution of this contract is admitted; its requirements are plain; and the failure of the company to comply with those requirements is conclusively shown, and is not sought to be controverted. This is sufficient warrant for a decree for an accounting, unless there is some justification shown for the action of the company. This justification is sought to be shown under an allegation of failure of consideration.

It is claimed on behalf of the appellant company that the appellee was not the first inventor of the inventions or devices which formed the subject matter of contract between him and the company; that he had no patentable invention; that his device was anticipated or dominated by the patent to Stover and Hance; that the appellant had taken up the Morrow device in good faith as effecting more conveniently the same purpose as that of the appellee, although the Morrow device was equally dominated by the Stover and Hance patent; and that the Morrow device was not a mere mechanical equivalent for the Farrow device. And it is claimed that under these circumstances the appellant company was released from its liability to the appellee under the contract.

But this defense is clearly untenable. The sale by the appellee to the appellant company was of all his right, title and interest; and the claims of both of his applications were undoubtedly for patentable inventions. They were so held by the Patent Office; and one of them was allowed without contest, although probably after the modifications not unusual in such matters, to go to an issue; and if a patent was not issued on the application so allowed, it was

distinctly on account of the failure or refusal of the company to pay the required fee, and the lapse was without the knowledge or consent of the appellee. The other application was abandoned upon the declaration of interference, apparently also without the knowledge and consent of the appellee; at all events, there is no satisfactory proof that he was consulted in the matter, as he undoubtedly should have been. It is very clear, therefore, that, if the appellee had even one patentable invention, for which he was awarded a patent, there was no total failure of consideration, as claimed; and if there was no total failure of consideration, the appellee beyond question was entitled to the accounting which he sought.

That the adoption of the Morrow device by the company was a fraud upon the appellee's rights under the contract, admits of no reasonable doubt. Even if Morrow conceived that device in good faith, and there was a patentable difference between it and the device of the appellee, as the Patent Office seems to have held by allowing it to go to a patent, yet it does not follow that the company was at liberty to adopt it to the exclusion of the Farrow device and wholly to discard the latter. It had contracted with the appellee with full knowledge of the nature and character of the latter's invention, and with reasonable ground to anticipate, what is usual in all such cases, that other similar, and perhaps even superior, devices might be invented and come into use. With that knowledge and with that anticipation, it had deliberately undertaken and bound itself by agreement to manufacture and sell the Farrow device, not in terms, it is true, to the exclusion of all other devices, but, according to the requirements of the contract, "with due diligence" and by "all proper and legitimate enterprise." And having so bound itself to the appellee, and having practically shut out the appellee from that field of invention, it was not thereafter at liberty to relieve itself from liability under the contract by discarding the invention of

the appellee and substituting therefor the invention of another person. It can not be that the vitality of such a contract can be made to depend on the assumption that no other similar device is coming into the market. The company, and not the appellee, took the risk of new inventions that might be superior to that of the contract. No such contract would be inviolable, if one of the contracting parties should be at liberty to withdraw from it, for the reason that during the lifetime of the contract some new device had appeared.

Nor does it make any difference in this regard that the company may have acted in what it claims to have been good faith in the adoption of the Morrow device. We can not see how there can be good faith in the violation of a contract on the sole ground that another line of business may be more profitable. But we are not satisfied that the company adopted the Morrow device in the honest belief that it was a better thing than the Farrow device. The proof is that it effected the same precise purpose; and there is no proof, at least no sufficient proof, to show that it was in any way a better or more economical article. The inference from the testimony is strong that it was adopted for the mere purpose of evading the contract with Farrow. The insincerity of the claim of good faith is well illustrated by the statement of the attorney of the company given in his deposition taken on its behalf, to the effect that *all* the claims of the Morrow patent, and most of those of the Farrow application, are covered by the patent to Stover and Hance.

Nor does the purchase of this last mentioned patent by the company seem to have been made in any better faith, so far as the appellee's rights were concerned, than was the adoption of the Morrow device. That purchase may have been, and probably was, a reasonable precaution on the part of the company to fortify its position; but it would be absurd to assume that the company was not aware of its

existence at the time at which it entered into the contract with Farrow. It was chargeable with notice of its existence, if it did not actually have it; but we are satisfied from the testimony that it had it. Having such knowledge or being chargeable therewith, it deliberately entered into the contract with Farrow to manufacture and sell the devices of the latter, which, under the contention of the appellant, were at the utmost no more than specific devices subordinate to the generic claims of the Stover and Hance patent; and it guaranteed to defend the Farrow invention against piracy and infringement. It is very clear, therefore, that it could not possess itself lawfully of the Stover and Hance patent in order to defeat the claim of Farrow. In fact, if the contention of the appellant in argument before us is correct, that the Farrow invention is dominated by the Stover and Hance patent, there is reason to infer that, by its contract with Farrow, the company was required to purchase that patent in order to protect the Farrow contract and the Farrow invention.

Only in argument, as we have said, and not in the pleadings, has the appellant company sought to relieve itself from liability to Farrow by reliance on the dominant character of the Stover and Hance patent. It alleges in argument that it is now operating under the Stover and Hance patent, and not either under the Morrow patent or under the Farrow invention. And yet the proof is that it still advertises what it manufactures and sells as the Morrow device. Owning, as it does, the Stover and Hance patent, the company could have just as easily manufactured the Farrow device under it as that of Morrow, if it had been willing faithfully to execute its contract with the appellee. The necessary inference from all the circumstances of the case is that it adopted the Morrow device simply as a pretext under which to evade its liability under that contract.

It follows that in equity the use by the company of the Morrow device should inure to the benefit of Farrow. And

if this conclusion involves the company in a double liability, that is the result of its own tortious actions, and should not be permitted to prejudice the rights of the appellee. This is the conclusion reached by the court below; and in that conclusion we concur.

The point is made in the pleadings, although not greatly insisted on in the argument before us, that the appellee's remedy was at law in an action for a breach of the contract, and not in equity for an accounting. But we find no merit in this suggestion. The remedy at law, it is true, was open to the appellee, but it was plainly inadequate and impracticable. It would have been difficult, if not impossible, to ascertain the proper measure of damages in such a case. But the appellee's case was one proper for a court of equity. The theory of his case is that, in view of the contract between the parties, the Morrow device was a mere mechanical equivalent or commercial substitute for his own device; and that therefore the company was liable to account to him for its use of the Morrow device as though it had been his own. And this theory is fully supported by the testimony. It is shown that the Morrow device effects precisely the same purpose as the Farrow device, and that the substitution of it by the company for the latter was merely an attempt to evade liability. Such substitution can not be allowed to have the effect of removing the appellant's accountability to the appellee.

It is also objected that the appellee's bill is multifarious, in so far as to an accounting from the company it seeks to add an attempt to have the Morrow device adjudged to be a mechanical equivalent of that of the appellee. But this objection we think is likewise unreasonable. It implies a misapprehension of the scope of the allegations of the bill. We do not understand that the bill seeks an adjudication of the rival merits of the two inventions; but that it charges that, in the hands of the company, the Morrow invention was a mere substitute for that of Farrow, and as such

intended to defeat and evade the appellee's just claims. In this we find no multifariousness. So far from there being multifariousness in the bill, it is developed by the record that in the substitution of the Morrow device by the company for the Farrow device is found the gist of the appellee's grievance.

We are of opinion that the decree of the Supreme Court of the District of Columbia in the premises was right and proper, and that it should be affirmed, with costs. The cause, therefore, will be remanded to that court for the further proceedings in that decree directed. *And it is so ordered.*